UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESTINY L. MCGRATH,                          Case No. 12-11267

          Plaintiff,                          Mark A. Goldsmith
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 15)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On March 21, 2012, plaintiff filed the instant suit seeking judicial review of
the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant
to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Mark A.
Goldsmith referred this matter to the undersigned for the purposes of reviewing the
Commissioner's decision denying plaintiff's claim for supplemental security
income.  (Dkt. 3).  This matter is before the Court on cross-motions for summary
judgment.  (Dkt. 12, 15).

### B.   Administrative Proceedings

Plaintiff filed the instant claim on September 28, 2008, alleging disability
beginning June 2, 2005.  (Dkt. 8-5, Pg ID 125-27).  The claim was initially

disapproved by the Commissioner on April 8, 2009. (Dkt. 8-3, Pg ID 69).
Plaintiff requested a hearing and on July 22, 2010, plaintiff appeared with counsel
before Administrative Law Judge ("ALJ") Andrew G. Sloss, who considered the
case *de novo*. (Dkt. 8-2, Pg ID 49-67). In a decision dated November 17, 2010,
the ALJ found that plaintiff was not disabled. (Dkt. 8-2, Pg ID 34-45). Plaintiff
requested a review of this decision, and the ALJ's decision became the final
decision of the Commissioner when the Appeals Council, on February 14, 2012,
denied plaintiff's request for review. (Dkt. 8-2, Pg ID 28-32).

For the reasons set forth below, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for
summary judgment be **GRANTED**, and that the findings of the Commissioner be
**AFFIRMED**.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 25 years of age at the time of the administrative hearing and
was 24 years old on the date the application for supplemental security income was
filed. (Dkt. 8-2, Pg ID 44). Plaintiff has no past relevant work history. (*Id.*). The
ALJ applied the five-step disability analysis to plaintiff's claim and found at step
one that plaintiff has not engaged in substantial gainful activity since September
28, 2008, the application date. (Dkt. 8-2, Pg ID 39). At step two, the ALJ found

2

that plaintiff's bipolar disorder was "severe" within the meaning of the second

sequential step, and that plaintiff's osteoarthritis and cysts were not "severe"

impairments.  (*Id.*).  At step three, the ALJ found no evidence that plaintiff's

impairment or combination of impairments met or equaled one of the listings in the

regulations.  (Dkt. 8-2, Pg ID 39-41).  At step four, the ALJ found that plaintiff had

the residual functional capacity ("RFC") to perform a full range of work at all

exertional levels, but that she could perform only simple routine two-step tasks on

a sustained basis.  (Dkt. 8-2, Pg ID 41-43).  At step five, the ALJ denied plaintiff

benefits because plaintiff could perform a significant number of jobs available in

the national economy.  (Dkt. 8-2, Pg ID 44-45).

### B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ's residual functional capacity ("RFC")

determination failed to account for plaintiff's moderate difficulties in

concentration, persistence, or pace and failed to incorporate plaintiff's severe

emotional impairments.  The ALJ found that plaintiff had moderate difficulties in

concentration, persistence, or pace and had the residual functional capacity to

perform simple, routine two-step tasks on a sustained basis.  Plaintiff contends that

the court in *Edwards v. Commissioner of Social Security*, 383 F. Supp.2d 920 (E.D.

Mich. 2005), found that a limitation to simple tasks, consisting of unskilled work,

was insufficient to convey a claimant's moderate limitation in concentration,

persistence, or pace to a vocational expert. Plaintiff further argued that the Sixth Circuit held that a moderate limitation may limit a claimant's ability to meet quotas, stay alert, work at a consistent pace, and that this would apply to even "simple, routine, unskilled jobs." *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).  Plaintiff argues that the hypothetical question posed to the VE was flawed because it failed to accurately describe plaintiff and take into account all of plaintiff's limitations, particularly as to her moderate limitations in concentration, persistence or pace.

Plaintiff also argues that the ALJ failed to sufficiently articulate the reasons for discounting plaintiff's credibility.  According to plaintiff, "[s]imply because the [Minnesota Multiphasic Personality Inventory-2 ("MMPI-2")] was interpreted to indicate a possibility of malingering, such does not invalidate the conclusions reached by claimant's mental health professionals after many years of mental health treatment" that plaintiff was diagnosed with bipolar disorder.  (Dkt. 12, Pg ID 370).

Plaintiff next argues that the ALJ failed to grant deference to her treating physicians and gave improper weight to a non-examining physician's opinion. Plaintiff claims that the ALJ failed to address plaintiff's medical records, other than to reject the Global Assessment of Functioning ("GAF") scores contained in those records.  Plaintiff argues that her highest reported GAF score was 50, and

many scores were significantly lower, and that a GAF score of 41 to 50 indicates a patient has serious symptoms or serious impairments in social, occupational, or school functioning.  According to plaintiff, the ALJ is required to indicate why he chose to discount a claimant's GAF scores in order for an unfavorable decision to be supported by substantial evidence, citing *Nelson v. Astrue*, 2009 WL 1871965, at *6-7 (E.D. Pa. 2009); *Span ex rel., R.C. v. Barnhardt*, 2004 WL 1535768 (E.D. Pa. 2004) in support.

### C.    Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ reasonably evaluated the medical evidence and his RFC finding and subsequent hypothetical question to the vocational expert are supported by substantial evidence.  The ALJ properly relied on the opinion of Bruce Douglass, Ph.D., a psychologist who reviewed plaintiff's medical record on behalf of the state agency and completed a Mental Residual Functional Capacity Assessment form, finding that while plaintiff's concentration would vary depending on her work tasks, her cognition was globally intact and she could care for herself.  (Dkt. 8-7, Pg ID 259-61).  Dr. Douglass concluded that plaintiff retained the capacity to perform simple, routine, two-step tasks on a sustained basis despite her mental limitations.  (*Id.*).  The Commissioner contends that plaintiff's argument that the ALJ should have incorporated the findings in Section I of the Mental Residual Functional Capacity Assessment form into his

RFC fails because courts with the Sixth Circuit and elsewhere have concluded that "Section I of the mental assessment is merely a worksheet and does not constitute the RFC assessment." *See Joiakim v. Comm'r of Soc. Sec.*, 2011 WL 1120043, at *3 (E.D. Mich. Mar. 8, 2011), *adopted by* 2011 WL 1134655 (E.D. Mich. Mar. 25, 2011); *see also Velez v. Comm'r of Soc. Sec.*, 2010 WL 1487599, at *6 (N.D. Ohio Mar. 26, 2010), *adopted by* 2010 WL 1487729 (N.D. Ohio Apr. 13, 2010).  Thus, the ALJ properly referred only to Section III of the state agency physician's mental RFC Assessment form.  The Commissioner argues that the ALJ found that Dr. Douglass's opinion was supported by the record and that there was no medical source opinion inconsistent with Dr. Douglass's opinion.  (Dkt. 8-2, Pg ID 43). The ALJ noted that plaintiff's mental condition improved with treatment.  (Dkt. 8-2, Pg ID 42).  Further, plaintiff maintained her activities of daily living despite her bipolar disorder, including caring for an infant child and four children of an incarcerated friend, and completing household chores and shopping as needed. (Dkt. 8-6, Pg ID 188-92; Dkt. 8-7, Pg ID 254).  The ALJ concluded that plaintiff's daily activities indicated that she could perform similar tasks in the workplace and her ability to care for children evidenced a level of concentration, care and mental fortitude that was greater than the extreme limitations she alleged.

According to the Commissioner, contrary to plaintiff's assertion, the ALJ did review the GAF scores the doctors assigned to plaintiff over the course of her

treatment, noting that the scores were as low as 31 and as high as 50. (Dkt. 8-2, Pg ID 42). The Commissioner contends that the ALJ reasonably gave more weight to the GAF score of 50 because it was the most recent score in the record and reflected plaintiff's improvement through treatment. In any event, the Commissioner concludes, contrary to the authority cited by plaintiff, the Sixth Circuit has recognized that "we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 511 (6th Cir. 2006). The Commissioner argues that plaintiff's reliance on the GAF scores overlooks the rest of the evidence that the ALJ evaluated in forming his RFC finding, including Dr. Douglass's opinion, plaintiff's improvement, and plaintiff's daily activities.

The Commissioner also argues that contrary to the plaintiff's claims that the ALJ overlooked her treatment notes from AuSable, the ALJ specifically discussed plaintiff's treatment at AuSable in finding that plaintiff's condition improved through medication and she reported feeling better and got along with her partner. (Dkt. 8-2, Pg ID 43; Dkt. 8-7, Pg ID 255, 324). The ALJ was not required to discuss every piece of data in his opinion, so long as he considers the evidence as a whole and reaches a reasoned conclusion. *Boseley v. Comm'r of Soc. Sec.*, 397 Fed. Appx. 195, 199 (6th Cir. 2010).

The Commissioner contends that the ALJ reasonably evaluated plaintiff's

credibility and found, after weighing the medical evidence, that plaintiff's allegations as to her limitations were not fully credible.  The ALJ agreed that plaintiff had mental limitations, but she failed to produce any medical records demonstrating that she had greater limitations than the ALJ found.  Rather, the medical records showed that plaintiff's condition improved with treatment and that she had normal intellectual functioning with a linear and rational thought process. (Dkt. 8-7, Pg ID 324).  The Commissioner argues that the ALJ properly noted that plaintiff did not put forth full effort on the November 2008 Millon Clinical Multiaxial Inventory-III ("MCM1-III") exam and that her treating psychologist reported that she was "malingering" and "deliberately faking [her] psychiatric problems or [was] significantly motivated to exaggerate their intensity," and thus reasonably determined that these notations cast doubt on plaintiff's credibility. (Dkt. 8-2, Pg ID 43; Dkt. 8-7, Pg ID 257).  In addition, the ALJ considered plaintiff's daily activities, noting that she cared for an infant child, she was able to take care of four other children for a friend, and she was able to care for all of her personal needs, complete household chores, and shop as needed.  (Dkt. 8-6, Pg ID 189-91).  Thus, the Commissioner concludes, the ALJ's decision, including his credibility finding, is supported by substantial evidence.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed.Appx. 521, 526 (6th Cir. 2006).

**B.    Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

12

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

13

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.   Analysis and Conclusions

#### 1.   The ALJ reasonably evaluated the medical evidence and his RFC finding is supported by substantial evidence

Plaintiff argues that the ALJ failed to properly evaluate the medical record evidence and therefore the ALJ's residual functional capacity finding and hypothetical question posed to the vocational expert failed to accurately portray

plaintiff's impairments and functional limitations. The assessment of the medical evidence conducted at a hearing is particularly important at step five of the evaluation of a disability claim because the RFC articulated by the ALJ will be used by the vocational expert ("VE") to assess the claimant's ability to perform work. The ALJ here determined that plaintiff had the severe impairment of bipolar disorder and that plaintiff had the residual functional capacity "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple routine two-step tasks on a sustained basis." (Dkt. 8-2, Pg ID 41). The question posed to the VE mirrored the ALJ's RFC. (Dkt. 8-2, Pg ID 65).

Here, the ALJ considered the entire case record, discussed plaintiff's assessment of her own deficits, and reviewed and discussed the medical opinions of the examining and consulting physicians and examiners in finding that plaintiff was not disabled at step five of the sequential evaluation because she could perform a significant number of jobs in the national economy. The ALJ properly relied on the opinion of Bruce Douglass, Ph.D., a psychologist who reviewed plaintiff's medical record on behalf of the state agency.[1] Dr. Douglass completed a

---

[1]State agency doctors are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." *See* 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(i). "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight

Mental Residual Functional Capacity Assessment form and determined that

plaintiff's bipolar disorder caused her mild difficulties with the activities of daily

living, moderate difficulties with social functioning and in maintaining

concentration, persistence, or pace, and that she experienced no episodes of

decompensation.  (Dkt. 8-7, Pg ID 273).  Dr. Douglass noted that plaintiff's

cognition is globally intact, her concentration will vary, and that she will have

trouble keeping up in demanding work settings.  (Dkt. 8-7, Pg ID 261).  Dr.

Douglass noted further that plaintiff's social functioning is restricted and that her

self care and adaptation are grossly within normal limits, and opined that plaintiff

retains the capacity to perform simple, routine, two-step tasks on a sustained basis.

(*Id.*).  The ALJ properly concluded that Dr. Douglass's opinion was supported by

the record, and that there was no medical source opinion inconsistent with Dr.

Douglass's opinion.  (Dkt. 8-2, Pg ID 43).[2]

---

than the opinions of treating or examining sources."  Social Security Ruling 96-6p,
1996 WL 374180, at *3 (1996); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d
399, 409 (6th Cir. 2009) ("Certainly, the ALJ's decision to accord greater weight
to state agency physicians over Blakely's treating sources was not, by itself,
reversible error.").

[2]Plaintiff's reliance on *Sherrill v. Secretary of Health and Human Services*,
757 F.2d 803 (6th Cir. 1985), in support of her argument that a state agency doctor
is never entitled to greater weight than a treating physician, is unavailing.  In
*Sherill*, the court questioned the ALJ's reliance on the non-examining doctor's
opinion because the doctor was not a psychiatrist, and therefore was not qualified
to provide an opinion on the plaintiff's mental capacity, and because the state
agency doctor's opinion was contrary to evidence offered by psychiatrists who

A review of the record evidence does not reflect that plaintiff had greater limitations than those identified by the ALJ.  Plaintiff sought treatment at AuSable Valley Community Mental Health ("AuSable") beginning in 2008.  Contrary to plaintiff's assertion that the ALJ failed to address the medical records from her treating physicians, the record reflects that the ALJ specifically discussed plaintiff's treatment notes at AuSable, finding that plaintiff was diagnosed with bipolar disorder, and that her condition improved through medication.  (Dkt. 8-2, Pg ID 42-43; Dkt. 8-7, Pg ID 312-13, 324).  That the ALJ did not specifically discuss every record from AuSable is not grounds for remand because the ALJ is not required to discuss each piece of data in his opinion, so long as he considers the evidence as a whole and reaches a reasoned conclusion.  *See Boseley*, 397 Fed. Appx. at 199 (citing *Kornecky*, 167 Fed. Appx. at 507-08).  According to the record evidence, plaintiff has been taking Lithium since 2009, and she reported that the medication reduced her anger symptoms and did not cause any side effects.  (Dkt. 8-7, Pg ID 320-21, 324, 326).  The record also indicates that plaintiff has been taking Depakote since 2009 and that she stated similarly that it helps with her anger symptoms and causes her no side effects.  (Dkt. 8-7, Pg ID 320, 324, 326).

---

stated that the plaintiff is disabled because of her psychiatric impairment.  *Id.* at 805.  In contrast, here, Dr. Douglass is a psychologist, and thus qualified to assess plaintiff's mental capacity, and there is no contrary evidence from plaintiff's treating sources or other sources in the record that plaintiff is disabled.

Further, plaintiff testified consistently at the hearing that the medications are helping with her anger, that she is not experiencing any side effects from the medications, and that she is no longer engaging in self-inflicted harm.  (Dkt. 8-2, Pg ID 59, 61-62).  The ALJ properly noted that "[w]hile these medications do not appear to be a cure-all, the record does indicate that they have lessened the claimant's bipolar symptoms and were helping her to meet her goals."  (Dkt. 8-2, Pg ID 43; Dkt. 8-7, Pg ID 324).  In addition, plaintiff's mental status was noted to be stable.  (Dkt. 8-7, Pg ID 325-26).  No treating source opined that plaintiff was unable to work, or was more restricted than found by the ALJ.  Thus, the ALJ noted that plaintiff's treatment record supported a finding that she has bipolar disorder, but reasonably found that these records did not support her claim of disabling symptoms.

Plaintiff argues that the ALJ impermissibly ignored her GAF scores in reaching his RFC finding.  "GAF examinations measure psychological, social and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations."  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).  Contrary to plaintiff's claim, the ALJ did not ignore plaintiff's GAF scores; rather he specifically acknowledged that the treating and examining physicians evaluated plaintiff as low as GAF 31 and as high as GAF 50.  (Dkt. 8-2, Pg ID 42).  The ALJ then gave more weight to

plaintiff's most recent scores of 50, which he acknowledged suggested moderate to serious mental conditions. (Dkt. 8-2,Pg ID 42; Dkt. 8-7, Pg ID 313, 326). The ALJ concluded that the preponderance of the medical evidence in the record indicates that plaintiff's symptoms are only moderate in nature because: there is no indication of suicidal or homicidal ideations or paranoid thoughts or hallucinations; while plaintiff has had problems interacting with her parents, she is currently in a relationship and able to get along with her partner; and she presents with normal intellectual functioning, and a thought process that is linear and rational. (Dkt. 8-2, Pg ID 42; Dkt. 8-6, Pg ID 188-95; Dkt. 8-7, Pg ID 313, 324-26). Thus, the ALJ did not ignore plaintiff's GAF scores, but instead reviewed the record evidence and found that the objective evidence and plaintiff's GAF scores did not reflect that she had greater limitations than those included in the ALJ's RFC finding.

In any event, it is well-recognized in the Sixth Circuit that GAF scores are a subjective rather than objective assessment and, as such, are not entitled to any particular weight. *See Kornecky*, 167 Fed. Appx. at 511; *see also Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007) ("GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental

functioning."). In direct contradiction to plaintiff's claim that an ALJ must explain why he discounted a GAF score, the Sixth Circuit has stated that "we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky*, 167 Fed. Appx. at 511. The Commissioner "has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs, and has indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings." *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 415 (6th Cir. 2006) (internal quotations omitted). And, in fact, the Sixth Circuit has held that the ALJ's complete failure to discuss the GAF scores assigned to plaintiff does not render his analysis unreliable. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (ALJ's failure to refer to GAF score did not make his RFC analysis unreliable); *see also Linebarger v. Comm'r of Soc. Sec.*, 2012 WL 3966297, at *7- 8 (E.D. Mich. July 18, 2012) (ALJ's failure to mention to GAF scores was not legal error, and noting further that the ALJ did explicitly discuss the reports that contained the scores).

A review of the ALJ's findings here reveals that he properly evaluated the record evidence in forming his RFC finding, including Dr. Douglass's opinion, plaintiff's treatment notes at AuSable, plaintiff's improvement, and plaintiff's daily activities–all of which provide substantial evidence supporting the ALJ's findings.

Plaintiff therefore fails to demonstrate any reversible error in the ALJ's assessment of her mental condition.

### 2. The ALJ's credibility assessment is supported by substantial evidence

Plaintiff testified that her bipolar disorder rendered her disabled, alleging that she has a difficult time understanding job-related tasks and she is easily frustrated when trying to complete such tasks. (Dkt. 8-2, Pg ID 52-53, 56-58). She stated that she has problems getting along with people, gets nervous very easily and sometimes feels physically ill as a result. (*Id.*). Plaintiff testified that she has had these symptoms since she was a teenager and that the symptoms have not changed much since their onset. (*Id.*).

The ALJ found, after careful consideration of the evidence, that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's subjective complaints were not fully credible to the extent they are inconsistent with the residual functional capacity assessment. Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues, and the court does not make its own credibility determinations. *See Walters*, 127 F.3d at 528. Further, the court cannot substitute its own credibility determination for the ALJ's. Rather, the court's "review of a decision

21

of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed[.]" *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. Appx. 943, 945 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476.  In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [plaintiff] are reasonable and supported by substantial evidence in the record." *Id.*  However, in reaching his credibility finding, "there is nothing patently erroneous in the ALJs decision to rely on h[is] own reasonable assessment of the record over the claimant's personal testimony." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (citing SSR 96-7p as stating that ALJs may rely on "[s]tatements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history" to assess credibility).

In this case, there is ample evidence supporting the ALJ's credibility determination.  The ALJ noted that plaintiff's records indicated that her symptoms improved with treatment, and that plaintiff did not put forth full effort on various diagnostic examinations, which the ALJ found casts doubt on plaintiff's credibility regarding the severity of her alleged symptoms.  (Dkt. 8-2, Pg ID 43).  Plaintiff

was evaluated using the Millon Clinical Multiaxial Inventory-III ("MCMI-III")

exam in November 2008, and the report noted that plaintiff's responses indicated

"a broad tendency to magnify the level of experienced illness or a characterological

inclination to complain or to be self-pitying.  On the other hand, the response style

may convey feelings of extreme vulnerability that are associated with a current

episode of acute turmoil."  (Dkt. 8-7, Pg ID 256–57).  An MMPI-2 test was

administered on September 24, 2009 "to rule out malingering," and the results

indicated that "[plaintiff] is Malingering" based on her "F-K difference [of] 16."

(Dkt. 8-7, Pg ID 299).  The report stated that "such individuals are motivated to

appear inadequate, incompetent, or to seek escaping responsibilities through

apparent psychiatric disability."  (*Id.*).  The ALJ's found that "these signs of less

than full effort, generally casts doubt on the [plaintiff's] credibility."  (Dkt. 8-2, Pg

ID 43). *See Thomas v. Astrue*, 2011 WL 4496533, at *7 (N.D. Ohio Sept. 27, 2011)

(finding no deficiency in the ALJ's credibility analysis finding plaintiff not

credible based on frequent reports of malingering and poor effort during testing);

*Bragg v. Comm'r of Soc. Sec.*, 2011 WL 1374067, at *6 (E.D. Mich. Mar. 22,

2011) ("A diagnosis of malingering undermines Plaintiff's credibility regarding her

limitations.") (citing *Alaali v. Astrue*, 2010 WL 3893925, at *5 (D. Idaho Sept. 30,

2010)), *adopted by* 2011 WL 1375577 (E.D. Mich. Apr. 12, 2011).

    The ALJ also noted that plaintiff maintained her activities of daily living

23

despite her bipolar disorder, and thus found that plaintiff's symptoms were not as severe as alleged.  (Dkt. 8-2, Pg ID 42).  Specifically, the ALJ noted that plaintiff cared for an infant child and four other children for an incarcerated friend.  (Dkt. 8-7, Pg ID 244, 254).  Further, plaintiff is able to care for her personal needs and complete household chores and shopping as needed.  (Dkt. 8-2, Pg ID 53-54; Dkt. 8-6, Pg ID 190-91).  The ALJ concluded that "[t]he claimant's care for the above-mentioned children also evidences a level of concentration, care and mental fortitude that is much greater than the extreme limitations to which she testified at the hearing."  (Dkt. 8-2, Pg ID 42).  It is appropriate for an ALJ to consider a claimant's daily activities in determining the credibility of her complaints.  *See Walters*, 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating the claimant's assertion of pain or ailments.") (citation omitted).  The Sixth Circuit has upheld an ALJ's rejection of a plaintiff's credibility where the plaintiff's activity level is inconsistent with the allegations of disabling symptoms.  *See, e.g., Cruse Comm'r of Soc. Sec.*, 502 F.3d 532, 542-43 (6th Cir. 2007) (plaintiff's testimony regarding her activities was "hardly reflective of any totally disabling disorder"); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 805 (6th Cir. 2008).  The ALJ concluded that "[w]hile this evidence does not automatically mean the [plaintiff] is capable of performing such tasks for a full workweek, it generally indicates that the [plaintiff] is capable

24

of performing similar tasks in the workplace."  (Dkt. 8-2, Pg ID 42).

Accordingly, the ALJ properly applied the proper standard in evaluating plaintiff's subjective complaints of alleged disabling symptoms.  The ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing a claimant's demeanor and credibility.  *Walters*, 127 F.3d. at 531.  The ALJ conducted a thorough evaluation of plaintiff's complaints in light of the objective medical evidence of record, her reported daily activities, and other pertinent factors.  Substantial evidence supports the ALJ's determination based on the medical and other evidence of record that plaintiff is not disabled.

### 3.   The ALJ's hypothetical question is supported by substantial evidence

In order for a VE's testimony to constitute substantial evidence that a significant number of jobs exists, "the [hypothetical] question[s] must accurately portray a claimant's physical and mental impairments."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d at 516.  A hypothetical question is not required to list all of plaintiff's medical conditions, but is only required to reflect her limitations.  *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Thus, "a hypothetical question need not incorporate a listing of the claimant's medical conditions, [so long as] the vocational expert's testimony . . . take[s] into account the claimant's functional limitations, i.e., what he or she 'can and cannot do.'"

25

*Infantado v. Astrue*, 263 Fed. Appx. 469, 476 (6th Cir. 2008) (citation omitted).

During the administrative hearing, the ALJ asked the vocational expert to assume a hypothetical individual with plaintiff's vocational background and the limitation to perform to simple, routine, two-step tasks on a sustained basis. (Dkt. 8-2, Pg ID 65). Based on these assumptions, the vocational expert testified that such a person would be able to work as a dishwasher or cleaner, which would include janitors and housekeepers. (*Id.*). Accordingly, the ALJ found that plaintiff was able to work and therefore was not disabled. (Dkt. 8-2, Pg ID 44-45).

Plaintiff argues that the ALJ's hypothetical question–limiting plaintiff to simple, routine, two-step tasks on a sustained basis–was flawed because it did not account for her moderate deficiencies in the broad functional area of concentration, persistence, and pace, and specifically that the ALJ failed to account for all of Dr. Douglass's findings listed in Section I of the Mental Residual Functional Capacity Assessment form. Plaintiff relies on *Edwards v. Barnhart*, 383 F. Supp.2d 920 (E.D. Mich. 2005) in support of her argument. The court in *Edwards* held that the ALJ's hypothetical, limiting plaintiff to "unskilled sedentary work," was not adequate to accommodate plaintiff's moderate limitations of concentration, persistence, and pace because plaintiff may have been unable "to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Id.* at 930. However, other courts in this district have disagreed with the *Edwards*

26

court's holding.  *See, e.g., Schalk v. Comm'r of Soc. Sec.*, 2011 WL 4406824, at

*11 n.6, 7 (E.D. Mich. Aug. 30, 2011) (distinguishing *Edwards* and discussing

how "there is no brightline rule requiring remand whenever an ALJ's hypothetical

includes a limitation of 'unskilled work' but excludes a moderate limitation in

concentration.  Rather, [the court] must look at the record as a whole and determine

if substantial evidence supports the ALJ's RFC."), *adopted by* 2011 WL 4406332

(E.D. Mich. Sept. 22, 2011); *Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, at

*3 (E.D. Mich. Sept. 30, 2010) (distinguishing *Edwards* and holding that

"[d]ecisions in this district reflect the conclusion that a moderate impairment in

concentration, persistence, and pace does not necessarily preclude simple, routine,

unskilled work").  Thus, "there is no bright-line rule requiring remand whenever an

ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a

moderate limitation in concentration.  Rather, this Court must look at the record as

a whole and determine if substantial evidence supports the ALJ's decision."

*Taylor v. Comm'r of Soc. Sec.*, 2011 WL 2682682 at * 7 (E.D. Mich. May 17,

2011), *adopted by* 2011 WL 2682892 (E.D. Mich. July 11, 2011).

    "[N]umerous courts have found similar hypotheticals adequately account for

moderate limitations in [concentration, persistence and pace]."  *Johnson v. Comm'r*

*of Soc. Sec.*, 2013 WL 1187031, at *5 (E.D. Mich. Mar. 21, 2013) (citing *Hess v.*

*Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7-8 (E.D. Mich. June 16, 2008)

27

("Simple routine tasks in a low stress environment" not incompatible with moderate limitations of concentration, persistence, or pace); *Latarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836, at *3 (E.D. Mich. Apr. 20, 2009) ("Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment.")). In *Hess* and *Taylor*, the courts both concluded that because the ALJ relied on the opinions in the PRTF to reach his conclusion that the plaintiff had moderate limitations in concentration, persistence, and pace, it was reasonable for the ALJ to also rely on the ultimate conclusion in the PRTF that the plaintiff could perform unskilled work on a sustained basis. *See Taylor*, 2011 WL 2682682 at *7-8 (citing *Hess*, 2008 WL 2478325, at *8).

Here, the PRTF similarly concluded that plaintiff could perform simple, routine, two-step tasks on a sustained basis, despite her moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. (Dkt. 8-7, Pg ID 261).  Thus, just as in *Taylor* and *Hess*, the ALJ reasonably relied on this ultimate opinion and there is no basis for the ALJ to have adopted or relied on only certain parts of the PRTF, while ignoring others.  *See Hess*, 2008 WL 2478325 at *8 ("Plaintiff's argument for the selective adoption of Dr. Marshall's 'moderate' limitations without considering the ultimate conclusion [that plaintiff could perform unskilled work on a sustained basis] would amount to a distortion of

the record."); *see also Lewicki*, 2010 WL 3905375 at *3 ("Plaintiff's objection

ignores a particularly compelling piece of evidence provided by the same state

psychologist who diagnosed Plaintiff's mental limitations in the first place. The

psychologist diagnosed moderate mental impairments, but also concluded that

Plaintiff's mental limitations would not prohibit him from performing simple,

unskilled work."). Additionally, the ALJ did not simply limit plaintiff to

"unskilled work," but rather accounted for plaintiff's specific limitations in the

PRTF by limiting plaintiff to "simple, routine two-step tasks." (Dkt. 8-7, Pg ID

261).

Therefore, substantial evidence supports the hypothetical question posed to

the VE, and plaintiff's claim of error should be denied. After review of the record,

the undersigned concludes that the decision of the ALJ, which ultimately became

the final decision of the Commissioner, is within that "zone of choice within which

decisionmakers may go either way without interference from the courts," *Felisky*,

35 F.3d at 1035, and the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the

plaintiff's motion for summary judgment be **DENIED**, that the Commissioner's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

29

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

30

Date: April 19, 2013                    s/Michael Hluchaniuk
                                        Michael Hluchaniuk
                                        United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on April 19, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: John M. Morosi, Theresa M. Urbanic, AUSA, Niranjan Emani and the Commissioner of Social Security.

                                        s/Tammy Hallwood
                                        Case Manager
                                        (810) 341-7850
                                        tammy_hallwood@mied.uscourts.gov

31