UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESTINY L. MCGRATH,

    Plaintiff,        Case No. 12-CV-11267

vs.              HON. MARK A. GOLDSMITH

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER (1) ACCEPTING AND ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE DATED APRIL 19, 2013 (DKT. 16), (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 12), (3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 15), and (4) OVERRULING PLAINTIFF'S OBJECTIONS (DKT. 17)**

## I. INTRODUCTION

This is a social security case. Plaintiff Destiny McGrath appeals from the final determination of the Commissioner of Social Security that she is not disabled and therefore not entitled to supplemental security income. The matter was referred to Magistrate Judge Michael Hluchaniuk for all pretrial proceedings. The parties filed cross motions for summary judgment (Dkts. 12, 15). Magistrate Judge Hluchaniuk issued a report and recommendation (R&R, Dkt. 16), recommending that the Plaintiff's motion be denied and that Defendant's motion be granted. Plaintiff has filed objections to the R&R. Pl.'s Objs. (Dkt. 17). The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). For the reasons that follow, the Court will accept the recommendation in the R&R, deny Plaintiff's motion, grant Defendant's motion, and overrule Plaintiff's objections.

The factual and procedural background of this case, along with the standard of review and legal principles governing social security appeals, have been adequately set forth by the Magistrate Judge in his R&R and need not be repeated here. Administrative Law Judge (ALJ) Andrew G. Sloss denied Plaintiff's claim for supplemental security income on finding that Plaintiff (i) was not impaired, (ii) had the residual functional capacity to perform a full range of work at all exertional levels, but with certain nonexertional limitations, and (iii) had the ability to perform jobs in the national economy. After reviewing the record and the motions for summary judgment, the Magistrate Judge determined that substantial evidence supported the ALJ's conclusion that Plaintiff is not disabled. Notwithstanding Plaintiff's objections to the R&R, the Court agrees for the reasons set forth below.

## II. ANALYSIS

Plaintiff advances three objections in support of his position that the decision of the ALJ is not supported by substantial evidence. The Court addresses each of Plaintiff's objections in turn.

### A. First Objection

Plaintiff's first objection argues that the R&R did not reasonably evaluate the medical evidence and that the residual functioning capacity (RFC) finding was not supported by substantial evidence. Pl.'s Objs. at 2-7 (Dkt. 17). Plaintiff re-asserts the argument advanced in her motion for summary judgment that "the ALJ failed to accurately incorporate the Plaintiff's severe impairments and functional limitations in the RFC." Id. at 3. Specifically, Plaintiff states that the ALJ failed to consider Plaintiff's dyslexia, learning disabilities, time in special education, diagnosis of post-traumatic stress disorder, and an instance where Plaintiff appeared depressed and in a "fragile condition" before a medical provider. Id. at 3-4. Plaintiff also notes

that, although the ALJ cited Plaintiff's medication regimen, the ALJ reached the wrong conclusion because the medication had not been helping Plaintiff as she continued to experience "assaultive ideation." Id. at 5. Plaintiff also refers to a December 14, 2009 psychiatric review to indicate that Plaintiff had not been on track toward stability. With respect to her multiple Global Assessment of Functioning (GAF) scores, Plaintiff argues that the ALJ should "have to put the greatest weight on the average or mean score given the variability of any patient's presentations."[1] Id. at 6. Lastly, Plaintiff argues that "the RFC failed to take into account the Plaintiff s severe impairments and was defective." Id. at 6. Plaintiff maintains that her "symptoms or manifestations" of her "severe psychiatric disabilities," combined with her learning disability, do "not support the conclusion that the Plaintiff could sustain concentration, persistence or pace at a level sufficient to allow participation in substantial gainful activity." Id. at 7.

Plaintiff's arguments raise the issue whether the ALJ based his decisions upon substantial evidence, which is required for the ALJ's findings of fact to be conclusive. See 42 U.S.C. § 405(g). If "there exists in the record substantial evidence to support a different conclusion," a district court may not reverse the ALJ's decision merely because it disagrees with the ALJ. McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence – more than a scintilla, but less than a preponderance – is enough evidence for a reasonable mind to "accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). When reviewing an ALJ's factual findings for substantial evidence, a

---

[1] GAF scores are "a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 503, n.7 (6th Cir. 2006). "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." Id.

district court must consider the record as a whole. Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). An ALJ is not required to catalogue all of the evidence in his decision, but "can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by party." Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006).

Here, the Court holds that the R&R reasonably evaluated the medical evidence and that the ALJ's RFC finding was supported by substantial evidence. Plaintiff's contention that the R&R and ALJ overlooked her medical evidence is unavailing. In her objection, Plaintiff references that she suffers from a learning disability and post-traumatic stress disorder, and that these conditions were not taken into account by the ALJ. However, the psychiatric review technique completed by Dr. Bruce Douglass references these conditions. A.R. 232, 236. This is the same psychiatric review technique from which Dr. Douglass concluded that Plaintiff did not suffer from any marked functional limitations, had moderate functional limitations in maintaining social functioning and maintaining concentration, persistence, and pace, had a mild functional limitation in activities of daily living, and no episodes of decompensation. A.R. 241. The ALJ explicitly relied upon these conclusions in his decision. A.R. 13.

Plaintiff's assertion that the ALJ did not take into consideration an instance where Plaintiff appeared depressed and in a "fragile condition" is similarly unpersuasive. The instance to which Plaintiff refers appears in a medical note from October 6, 2009 by Dr. Jacqueline Moses of AuSauble Valley Community Mental Health – Tawas. A.R. 288-289. Although Plaintiff appeared in a "fragile condition" at that time, the note states that Plaintiff "is instructed that if [her medication regimen] does not work or she cannot tolerate the side effects, she is to contact the clinic . . . ." A.R. 288. Further evidence in the record indicates that Plaintiff's mental health

4

was gradually improving, which Plaintiff, herself, recognized. See, e.g., A.R. 280 ("I think that my mental state is doing much better when I started."). In rendering his decision, the ALJ referenced this evidence and Plaintiff's statements at the hearing when she admitted that she was not experiencing side effects from her medication. A.R. 15-16.

Plaintiff's objection that the ALJ overlooked her "severe impairments" of dyslexia and time in special education lacks merit. First, Plaintiff does not argue or demonstrate how dyslexia or time in special education are "severe impairments." Second, Plaintiff has an IQ of 90, which Plaintiff notes in her objection. Pl.'s Objs. at 3. Although the ALJ did not specifically mention Plaintiff's claim of dyslexia or time in special education, he did refer to Plaintiff's IQ as not falling below the threshold for mental incapacity for listing 12.05. A.R. 14. Further, the ALJ had no obligation to cite every piece of evidence, if substantial evidence supported his conclusion, as is the case here. Kornecky, 167 F. App'x at 508.

Plaintiff also states in her objection that her "medications had not necessarily lessened [her] Bipolar Disorder nor were 'helping her to meet her goals' in any definitive way (Transcript Pg ID 308). Plaintiff was still experiencing assaultive ideation." Pl.'s Objs. at 5. However, the July 23, 2009 medical record to which Plaintiff refers, states that Plaintiff was unsure whether the medication had been helping her and that she desired to see a psychiatrist "in an effort to have medication improve her mood." A.R. 276. At most, the July 23 2009 record indicates that Plaintiff did not know whether the medication was helping her. On the other hand, there is evidence that Plaintiff was having "assaultive ideation" because the record states "[t]here are sometimes [sic] when [Plaintiff] has been angry and has had thoughts to hit others, but she doesn't." A.R. 276.

Even though the ALJ did not specifically refer to the July 23, 2009 record in his decision, substantial evidence supported his conclusion that Plaintiff was gradually improving. The ALJ cited an October 6, 2009 medical record, which indicates that Plaintiff had been on lithium for a month and that it had helped her anger symptoms. A.R. 289. A March 14, 2010 medical record, cited by the ALJ, states that Plaintiff "reports having better impulse control." A.R. 16, 281. Also cited by the ALJ is a June 14, 2010 medical record, in which Plaintiff asserts, "I think that my mental state is doing much better when I started." A.R. 15, 280. The ALJ reasoned that "[w]hile these medications do not appear to be a cure all, the record does indicate that they have lessened [Plaintiff's] bipolar symptoms." A.R. 16. Thus, substantial evidence supported the ALJ's conclusion that Plaintiff's demonstrated gradual improvement.

Plaintiff's objection also takes issue with the notion that Plaintiff was "stable," arguing that a December 14, 2009 medical record stated that Plaintiff suffered from bipolar disorder, adjustment disorder, and borderline personality disorder. Pl.'s Objs. at 5. Plaintiff argues that the R&R and ALJ notation that Plaintiff was "stable" does not comport with the evidence. Id. The Court rejects this argument because it mischaracterizes the record. Plaintiff's medical providers noted that Plaintiff was "stable." See A.R. 325 (6/1/2010 pharmacological review). The ALJ's decision did not make a finding of whether Plaintiff was "stable," but decided whether Plaintiff was disabled so as to be able to receive supplemental security income benefits. As stated previously, the ALJ found that Plaintiff was making gradual improvement and a review of the record indicates that substantial evidence supports his decision. For example, records which post-date the December 14, 2009 record cited by Plaintiff indicate her improvement. See, e.g., A.R. 281 ("Plan of Service Review" notes that Plaintiff's "overall progress" was "much improved").

6

Plaintiff next argues in her objection that, in regard to her GAF scores, the ALJ should "have to put the greatest weight on the average or mean score given the variability of any patient's presentations." Id. at 6. Plaintiff cites no law for this proposition and the Court rejects this argument. As the R&R correctly explained, the Sixth Circuit has stated that there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." Kornecky, 167 F. App'x at 511. Indeed, GAF "scores have no direct correlation to the severity requirements of the mental disorders listings." DeBoard v. Comm'r of Soc. Sec., 211 F. App'x 411, 415 (6th Cir. 2006) (internal quotations omitted). The import of a GAF score "is thus not dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues." Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 684 (6th Cir. 2011).

Here, the ALJ's emphasis on the most recent GAF score of 50, rather than an older score of 31, was entirely permissible. As Sixth Circuit precedent indicates, the ALJ does not have to consider a GAF score in any particular manner. Kornecky, 167 F. App'x at 511. The ALJ had flexibility in deciding what significance to attribute to Plaintiff's GAF scores, and the Court explicitly rejects Plaintiff's contention that the ALJ had to average the scores. In analyzing the most recent GAF scores, the ALJ set forth plausible reasons for assigning it more weight, i.e., (i) it being more recent and (ii) the score of 50 indicating "moderate to serious mental symptoms" correlating with other records evincing "moderate" symptoms. A.R. 15.

Lastly, Plaintiff argues that the RFC was defective because it is not supported by substantial evidence. Id. at 6-7. Plaintiff asks the Court to do something which it cannot: overturn the ALJ's decision, despite the presence of substantial evidence in the record to support the ALJ's finding that Plaintiff is not disabled. The Sixth Circuit has stated that the "substantial

evidence standard presupposes that there is a zone of choice within which the Commissioner may proceed without interference from the courts." Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994) (quotation marks omitted). Here, as the R&R stated, the ALJ properly reviewed the record and formulated the RFC.

Accordingly, for all the reasons stated above, the Court overrules Plaintiff's first objection.

### B. Second Objection

Plaintiff's second objection argues that the ALJ's credibility determination was not supported by substantial evidence. One of the prime functions of the ALJ is to determine credibility issues because, in social security cases, courts do not make their own credibility determinations. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997) (stating that courts "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.") (quotation marks omitted). In making a credibility determination, an ALJ may rely on his "own reasonable assessment of the record over the [plaintiff's] personal testimony." White v. Comm'r of Soc. Sec., 572 F.3d 272, 287 (6th Cir. 2009). Thus, a court cannot make its own credibility determination; a court can merely evaluate "whether or not the ALJ's explanations" for credibility "are reasonable and supported by substantial evidence in the record." Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003).

In objecting, Plaintiff argues that the ALJ's "credibility determination" was erroneous because "the attack on the Plaintiff's credibility focuses upon the so-called malingering evidenced by the result" on the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) test. Pl.'s Objs. at 8. Plaintiff asserts that the results of the MMPI-2 test were isolated and should not

outweigh the other evidence in the record, indicating Plaintiff's need for mental health services. Id. at 8-9.

This argument lacks merit for two reasons. First, the MMPI-2 test concluded that Plaintiff was malingering. A.R. 267. Therefore, the ALJ had grounds to question Plaintiff's credibility. Second, the ALJ's credibility determination did not "focus" on Plaintiff's MMPI-2 performance. As the ALJ's decision demonstrates on its face, the ALJ considered a host of evidence, including Plaintiff's conduct at the hearing, GAF scores, activities of daily living, improving condition, score on the Millon Clinical Multiaxial Inventory-III report, the opinion of Dr. Douglass, and the statements of Amanda Undurean, Plaintiff's friend. A.R. 15-16. Given the consideration of this other information, it cannot be fairly argued that the ALJ "focused" on the MMPI-2 exam. Because the ALJ provided reasonable explanations supporting his conclusion regarding Plaintiff's credibility, the Court cannot disturb the ALJ's credibility determination. Jones, 336 F.3d at 476.

Accordingly, Plaintiff's second objection is overruled.

### C. Third Objection

Plaintiff's third objection argues that the ALJ's hypothetical question was not supported by substantial evidence. Plaintiff argues that the ALJ failed to incorporate Plaintiff's limitations, so that they "were not adequately taken into account in the RFC." Pl.'s Objs. at 10. For the reasons set forth below, the Court rejects this argument.

Under the applicable regulations, the ALJ must determine Plaintiff's RFC. 20 C.F.R. § 416.920(e). RFC "is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments." Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 155

9

(6th Cir. 2009). The ALJ must assess all of a plaintiff's limitations, not just those that are severe, in determining RFC. 20 C.F.R. §§ 416.920(e); 416.945.

With regard to a mental limitation, courts have held that, if tasks are tailored to the plaintiff in light of the plaintiff's mental limitation, an ALJ does not need to specifically reference a particular mental limitation in the RFC, provided that there is substantial evidence in the record. Anderson v. Comm'r of Soc. Sec., No. 12-cv-13066, 2013 WL 3285220, at *15 (E.D. Mich. June 28, 2013) ("[T]here is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled, routine work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC."). For example, in Berkowski v. Commissioner of Social Security, 652 F. Supp. 2d 846 (E.D. Mich. 2009), the court held that the ALJ correctly evaluated the plaintiff's mental limitations in concluding that the plaintiff had "moderate difficulties in maintaining concentration, persistence or pace." Id. at 860. The Berkowski ALJ formulated his RFC to limit the plaintiff "to performing simple, unskilled work with one, two or three step instructions." Id. In overruling the plaintiff's objection, the court stated that it did not refer "to any specific work-related mental limitation" that "requires a more restrictive limitation than that set forth in the RFC." Id. The RFC limiting the plaintiff to "unskilled work of up to three step instructions provide[d] more detail than a mere reference to 'simple' work" and was supported by substantial evidence. Id. See also Morgan v. Comm'r of Soc. Sec., No. 12-12021, 2012 WL 6553284, at *11 (E.D. Mich. Nov. 28, 2012) (holding that the ALJ appropriately accounted for deficiencies in concentration, persistence, and pace in the RFC finding by limiting the claimant to work in a "'low stress environment' (defined as 'only minimal changes in work tasks or work environment') and 'simple, routine, repetitive work tasks.'").

After formulating the RFC, the ALJ may ask a vocational expert to testify in response to a hypothetical question, which can serve as substantial evidence to support a conclusion that a claimant can perform other work. Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2010). The question "must accurately portray a claimant's physical and mental impairments." Id. The question should allow the vocational expert to take into account the plaintiff's functional limitations, or in other words, what she "can and cannot do." Infantado v. Astrue, 263 F. App'x 469, 476 (6th Cir. 2008) (citation omitted). But the question is not required to list all of plaintiff's medical conditions; it is only required to reflect her limitations. See Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004) (holding that hypothetical questions to vocational experts are not required to include lists of a plaintiff's medical conditions).

Here, the ALJ stated that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] can perform simple routine two-step tasks on a sustained basis." A.R. 14. Plaintiff's objection regarding the insufficiency of the RFC states that the ALJ failed to consider Plaintiff's being "hearing disabled" and "suffering from PTSD," "particularly from the standpoint of absenteeism and time spent 'off task.' These limitations, which should have been found to be severe impairments, were not adequately taken into account in the RFC." Pl.'s Objs. at 10.

However, after thorough review, the record does not indicate, and Plaintiff does not cite any document in the record, that Plaintiff suffered from being "hearing disabled." Plaintiff's contention that she is hearing impaired simply lacks evidentiary support. See Buxton v. Halter, 246 F.3d 762, 772-773 (6th Cir. 2001) (explaining that substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (quotation marks omitted).

11

With regard to Plaintiff "suffering from PTSD," Dr. Douglass noted this limitation in the psychiatric review technique, wherein he reached an overall conclusion that Plaintiff suffered from moderate limitations in maintaining concentration, persistence, and pace. A.R. 236, 241. Douglass' mental RFC assessment concluded that Plaintiff's "[c]ognition is globally intact, but concentration will vary, and she will have trouble keeping up in demanding work settings." A.R. 229. Douglas concluded that Plaintiff "retains the capacity to perform simple, routine 2-step tasks on a sustained basis," a statement mirroring the ALJ's RFC. Id.

Like Berkowski where the plaintiff's moderate limitations in concentration, persistence, and pace were accounted for in the RFC by limiting the plaintiff to "unskilled work of up to three step instructions," the ALJ in the instant case accounted for Plaintiff's mental limitations in his RFC by adopting Dr. Douglass' conclusion to limit Plaintiff to "simple routine two-step tasks on a sustained basis." Berkowski, 652 F. Supp. 2d at 860. See also Jones v. Comm'r of Soc. Sec., No. 11-14176, 2012 WL 4355532, at *9 (E.D. Mich. Sept. 24, 2012) (holding that RFC supported by substantial evidence and was substantially similar to treating physicians' assessments). Plaintiff's objection does not refer to any specific work-related mental limitation that "requires a more restrictive limitation than that set forth in the RFC." Berkowski, 652 F. Supp. 2d at 860.

Furthermore, the ALJ's RFC was supported by substantial evidence. The ALJ took into consideration Plaintiff's (i) medical records indicating improving mental health, (ii) moderate mental limitations, (iii) ability to maintain a relationship with a partner, (iv) normal intellectual functioning, (v) linear and rational thought process, (vi) activities of daily living, (vii) childcare for her own child and for other children, and (viii) adherence to, and positive results from, her medication regimen. A.R. 15-16. The ALJ also considered Dr. Douglass' opinion, which the

ALJ found to carry significant weight because it was (i) consistent with the record, (ii) did not conflict with any other medical opinion, and (iii) was provided by a medical provider familiar with social security regulations. A.R. 16.

The ALJ properly included Plaintiff's limitations in his hypothetical question to the vocational expert. Consequently, the ALJ could also rely upon the testimony provided by the vocational expert to the hypothetical question.

Accordingly, the Court overrules Plaintiff's third objection.

### III. CONCLUSION

Accordingly, the Court overrules Plaintiff's objections (Dkt. 17), denies Plaintiff's motion for summary judgment (Dkt. 12), and grants Defendant's motion for summary judgment (Dkt. 15).

SO ORDERED.

Dated: August 23, 2012  
Flint, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 23, 2012.

s/Amanda Chubb for Deborah J. Goltz  
DEBORAH J. GOLTZ  
Case Manager